NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0716n.06

No. 14-3221

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 10, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| AMANDA A. MARTIN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS MAURER, Wayne County Sheriff, Sued | ) | ON APPEAL FROM THE |
| in His Official and Individual Capacities; WAYNE | ) | UNITED STATES DISTRICT |
| COUNTY COMMISSIONERS; LINDSAY | ) | COURT FOR THE |
| BREITENSTINE; HOLLY YOST; JOEL MARMET, | ) | NORTHERN DISTRICT OF |
| Deputy, Sued in His Individual and Official | ) | OHIO |
| Capacities, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

Before: SUTTON and KETHLEDGE, Circuit Judges; ROSENTHAL, District Judge.[1]

KETHLEDGE, Circuit Judge. Amanda Martin appeals the dismissal of her 42 U.S.C. § 1983 claims against the Wayne County (Ohio) Commissioners and two Wayne County police officers. The district court granted judgment on the pleadings to the defendants, holding that Martin had failed to state a malicious-prosecution claim. We affirm.

I.

On February 14, 2009, Lindsay Breitenstine picked up Holly Yost in a Chevrolet Cavalier. They drove to the home of Breitenstine's ex-boyfriend, Tim Roerich. Breitenstine parked in Roerich's driveway, exited the car, broke open Roerich's front door, and stole money

_____

[1] The Honorable Lee H. Rosenthal, Judge for the Southern District of Texas, sitting by designation.

and marijuana from the home. Breitenstine then returned to the car and drove away with Yost. During the burglary, Dustin Wheeler was standing outside a house across the street. He saw the Cavalier pull into Roerich's driveway and observed a brown-haired woman in her early 20s, about 5'3" in height, exit the car and go into Roerich's house. Martin, the plaintiff here, is 5'8" in height.

Later, Breitenstine and Yost told police that Martin had participated in the burglary and had accompanied Breitenstine into Roerich's home. Deputy Joel Marmet went to Martin's home to investigate. Tim Martin—Martin's father—told Deputy Marmet that his daughter had been home with him when the burglary occurred. Tim Martin offered to provide a written statement, but Marmet declined. Although four other family members were also present at the Martin home, Marmet left without interviewing any of them. He did not investigate the burglary further.

In March 2009, the Wayne County Prosecutor's Office informed Marmet that it lacked sufficient evidence to prosecute Martin for the burglary. The Prosecutor's Office also suggested to Marmet that he should find Martin and obtain her statement. Marmet did not try to locate Martin, or to obtain additional evidence.

In January 2010, Martin completed boot camp for the United States Marine Corps. That same month, the Prosecutor's Office presented evidence to a grand jury about the events of February 14, 2009. The grand jury indicted Martin on one count of burglary. Thereafter, a judge issued an arrest warrant for Martin. She was arrested in December 2010. After Martin's arrest, the Marine Corps dishonorably discharged her from service.

Martin was tried for burglary in May 2011. Four of her family members—the ones present at Martin's home when Deputy Marmet interviewed Tim Martin—testified that she had been home with her father on the day of the burglary. Wheeler testified that he had seen only

two women at the scene of the burglary, neither of whom was Martin. After deliberating 35 minutes, the jury acquitted Martin.

In May 2013, Martin sued Marmet, Wayne County Sheriff Thomas Maurer, and the Wayne County Commissioners under 42 U.S.C. § 1983, claiming they had maliciously prosecuted her. She also brought state-law claims. The district court granted the defendants judgment on the pleadings on Martin's malicious-prosecution claim and declined to exercise supplemental jurisdiction over the state-law claims. This appeal followed.

## II.

We review de novo a district court's grant of judgment on the pleadings under Rule 12(c). *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010). To survive a Rule 12(c) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.*

## A.

Martin first challenges the dismissal of her malicious-prosecution claim against Deputy Marmet and Sheriff Maurer in their individual capacities. A malicious-prosecution claim under § 1983 has four elements: first, that the defendant "made, influenced, or participated" in the decision to prosecute the plaintiff; second, that the prosecution lacked probable cause; third, that the criminal proceeding caused a deprivation of the plaintiff's liberty apart from the initial seizure; and fourth, that the criminal proceeding resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (internal quotations and punctuation omitted).

We focus on the second element here. Martin was arrested on the burglary charge following a grand jury indictment. Subject to one exception, a valid grand jury indictment "conclusively determines the existence of probable cause." *See Robertson v. Lucas*, 753 F.3d

606, 616 (6th Cir. 2014) (internal quotation marks omitted). The exception applies when the defendants knowingly present false testimony to the grand jury. *Id.* Here, there is no allegation that Marmet or Maurer presented false testimony to the grand jury to obtain the indictment. The indictment therefore established probable cause for Martin's prosecution, and her malicious-prosecution claim fails.

Martin offers three reasons why she thinks Deputy Marmet and Sheriff Maurer are potentially liable nonetheless. First, Martin argues that the officers withheld "crucial exculpatory evidence" from the grand jury, including the statements of Wheeler and Tim Martin. But the government has no duty to provide potentially exculpatory evidence to the grand jury. *See United States v. Angel*, 355 F.3d 462, 475 (6th Cir. 2004). So this argument fails.

The second argument is similar: that Deputy Marmet and Sheriff Maurer withheld this exculpatory evidence "from the prosecution during the pendency of the criminal case." But this allegation is absent from Martin's complaint; and Federal Rule of Civil Procedure 8 requires the plaintiff's complaint to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *See Robertson*, 753 F.3d at 623 (internal quotation marks omitted). Thus, this argument also fails.

Finally, Martin argues that, after she was indicted, Deputy Marmet and Sheriff Maurer failed to obtain exculpatory evidence that was readily available and that would have eliminated probable cause for prosecuting her. Specifically, she says that Marmet failed to show Wheeler a photo array with her photograph, failed to interview Martin's alibi witnesses or Martin herself, failed to search the crime scene for evidence, and failed to investigate the accuracy of Yost's and Breitenstine's statements. But once probable cause is established—here, by the grand jury indictment—the police have no constitutional duty to investigate further or to seek potentially

exculpatory evidence. *See Ahlers v. Schebil*, 188 F.3d 365, 371-72 (6th Cir. 1999). Deputy Marmet's investigation did not violate Martin's constitutional rights.

B.

Martin also challenges the dismissal of her *Monell* claim against the Wayne County Commissioners and Maurer and Marmet in their official capacities. Under *Monell*, a municipality can be liable under § 1983 when an official "policy or custom" caused a violation of the plaintiff's constitutional rights. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694-95 (1978). A municipality cannot be liable under *Monell* absent an underlying constitutional violation. *Robertson*, 753 F.3d at 622. Here, because Martin's complaint failed to state a constitutional violation, the district court correctly held that her *Monell* claim likewise fails.

Martin responds that *Moldowan v. City of Warren*, 578 F.3d 351, 394 n.20 (6th Cir. 2009), supports her position that a municipality can be liable under *Monell* absent a constitutional violation by one of its employees. But Martin misreads this case. Our decision in *Moldowan*—and specifically the footnote upon which Martin relies—does not say that a plaintiff can proceed with a *Monell* claim even absent a constitutional violation. Rather, we merely said that, on the record before us in that appeal, the absence of a constitutional violation by one officer left open the possibility of a violation by another. *Id.*

One can certainly sympathize with Martin's distress regarding the consequences of her prosecution. But her complaint does not describe a violation of federal law, and thus she has no remedy under §1983. The district court's judgment is affirmed.